THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL ZOZAK, Defendant-Appellant.

Fifth District    No. 80-255

Opinion filed October 14, 1981.

John H. Reid, of State Appellate Defender's Office, of Mt. Vernon, and Patrick M. Carmody, research assistant, for appellant.

John Clemons, State's Attorney, of Murphysboro (Martin N. Ashley and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

Defendant was charged by information with possession of .19 grams of cocaine, a controlled substance, in violation of section 402(b) of the Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(b)). Defendant was convicted as charged after a bench trial at which all facts were stipulated by the parties.

In this appeal, defendant contends that (1) the trial court erroneously denied his motion to suppress a foil packet containing cocaine, and (2) because all facts at the bench trial were stipulated, defendant should have been admonished pursuant to Supreme Court Rule 402 (Ill. Rev. Stat. 1979, ch. 110A, par. 402) as though he had pleaded guilty.

Two witnesses testified at the hearing on defendant's motion to suppress, David Allen and Michael Teas, both Jackson County detectives. According to these witnesses, pursuant to a search warrant listing items taken in a burglary, they entered defendant's residence, an 8- by 10-foot room in an 80- by 30-foot shed behind the residence of Barbara Trent in Makanda, Illinois. The victims of the burglary, Dr. Hunter and Dr. Ellert, and Ms. Trent were also present when the search warrant was executed. Defendant arrived while the detectives were present and was arrested. Numerous items related to the burglary were, in fact, seized during the search, including three bracelets, two watches, a knife, a typewriter, a calculator, and a down jacket.

Detective Allen testified that he had been a Metropolitan Enforcement Group officer for five years, that he had participated in 50 to 60

prior drug-related arrests and that he had attended various classes pertaining to narcotics. Allen related that when he entered defendant's room, he noticed an aluminum foil "packet" located on the corner of a night stand beside the bed. Allen then stated that the packet was "folded in such a manner that it indicated to me it could be a controlled substance." He elaborated that "it was folded basically in half and lipped, but there was [sic] creases on it indicating it had been folded into a smaller packet at one time, which is very common for the sale or storage of controlled substances." He conceded that legitimate substances might be enclosed in foil, "but not usually in that size." He could not ascertain its contents without opening it. He did so and discovered that it contained white powder. To Allen's knowledge they were not looking for anything the size of the foil packet under the search warrant. Allen also found "drug paraphernalia" of an unspecified nature inside the top drawer of the night stand.

Detective Teas testified that he did not see the foil packet until Allen told him he had found it and was seizing it. Teas was unaware whether Allen had already looked inside it. Teas' first good look at it was at the sheriff's office. He described it as approximately one and one-quarter inches square.

The trial court stated his finding that the nature of the packet, and the place and circumstances in which it was found, gave the officer probable cause to believe defendant had committed the offense of unlawful possession of a controlled substance. The court reserved the question of whether the search warrant sufficiently described the premises to be searched, a question he later resolved against defendant.

Defendant concedes that the officers were within his room pursuant to a valid search warrant. The parties dispute, however, whether Allen's discovery of the unspecified drug paraphernalia preceded Allen's seizure of the foil packet and thus could have been a fact contributing to Allen's belief that the packet contained narcotics. The dispute is based on Allen's answers to two questions. The first was posed by the State's Attorney:

> "Q. And did you notice that paraphernalia prior to your noticing the aluminum packet?
> A. No, sir. It was after."

The second was asked by defense counsel on cross-examination:

> "Q. So then when you saw the tinfoil packet did you proceed to pick it up and open it?
> A. That's correct."

Defendant contends that these questions and answers show Allen seized and opened the packet prior to discovering the "paraphernalia." The State characterizes these responses as ambiguous with respect to that inquiry.

The State also notes in this regard that (1) it was initially defendant's burden to show that the seizure of the packet was unlawful (Ill. Rev. Stat. 1979, ch. 38, par. 114—12(b); *People v. Normant* (1975), 25 Ill. App. 3d 536, 323 N.E.2d 553), and (2) in reviewing the ruling of the trial court on the motion to dismiss, it is this court's duty to affirm the result reached unless the ruling of the trial court was "manifestly erroneous." *People v. Smith* (1977), 51 Ill. App. 3d 87, 366 N.E.2d 426.

■■ We find the two questions and answers recited above to be sufficiently unambiguous to show that Allen seized the packet before discovering the "paraphernalia." However, this finding does not, in our view, necessitate reversal of the judgment if Allen had probable cause when he seized the packet to believe it contained narcotics. As the State notes and defendant concedes, our supreme court's disposition of *People v. Davis* (1965), 33 Ill. 2d 134, 210 N.E.2d 530, implies that the sighting of a foil packet may constitute probable cause to believe that it contains narcotics. Defendant cites authority from other jurisdictions which appears contrary to *Davis* on this point (*People v. Young* (1979), 89 Mich. App. 753, 282 N.W.2d 211; *Remers v. Superior Court of Alameda County* (1970), 2 Cal. 3d 659, 470 P.2d 11, 87 Cal. Rptr. 202). However, we feel compelled to follow *Davis* which we view as essentially indistinguishable from the case at bar.

In *Davis*, the defendant was arrested for two minor traffic violations. When the defendant got out of his car, the arresting officer observed a tinfoil package on the floor of the driver's side of the front seat and picked it up. The defendant stated he did not know what the package was or how it got in his car. The officer seized and opened the package. Our supreme court affirmed without discussing whether the sighting of the foil package constituted sufficient cause to seize it; however, it appears the cause could not have been affirmed had the answer to that question been other than affirmative.

In the instant case Detective Allen had at least as much reason to suspect the packet contained narcotics as did the officer in *Davis*. Here, the officer had considerable training and experience in the detection of narcotics. The package was of a size appropriate for carrying such a substance, and was allegedly folded in a manner characteristic of narcotics packaging.

Defendant urges, however, that *Davis* is distinguishable in that the instant seizure occurred, not in defendant's car, but in his home. Defendant urges that "the intrusion into the sanctity of [one's] home may require a higher standard of probable cause than the intrusion into one's automobile." The State, while urging that this argument is without basis in law, notes that defendant concedes that the officers were properly within

defendant's home when the foil packet was discovered. We agree with the State that under these facts it is not significant that the seizure occurred within defendant's home rather than his vehicle.

Defendant urges for comparison this court's recent decision in *People v. Wright* (1980), 80 Ill. App. 3d 927, 400 N.E.2d 731. In *Wright*, this court held that a police officer did not have probable cause to seize two hand-rolled white cigarettes located in plain view in the defendant's car. We find *Wright* distinguishable in view of the fact that defendant does not suggest, nor can we envision, any legitimate substance that is character-istically packaged in a wrapper similar to the foil packet sized. Further, absent Officer Allen's drug arrest expertise and his familiarity with the packaging of narcotics in aluminum foil, the packet in question would have presented no special significance. Allen's testimony did not indicate that he believed all foil packets, or all small foil packets, contained controlled substances. Our conclusions in this regard are ably articulated by the court in *United States v. Bolden* (D.C. App. 1981), 429 A.2d 185, 186, a case involving a tinfoil package "wrapped in a manner in which PCP is packaged," in which the court stated:

> "* * * We hold as a matter of law that the officer had the requisite experience to determine that the tinfoil package probably contained contraband and this fact, together with his other observations, gave him probable cause to seize the package."

■■ We turn to defendant's final contention on appeal, that the trial court should have given Rule 402 admonitions before permitting a bench trial on entirely stipulated facts. In the instant bench trial, both parties waived opening and closing statements and evidence was presented in the form of a stipulation. The State's Attorney recited in the stipulation that Detective Allen found the foil packet while executing the search warrant and that analysis of its contents revealed .19 grams of cocaine. The trial judge immediately announced his verdict of guilty, and the parties waived the presentence report and proceeded to sentencing.

We find defendant's contention sufficiently rebutted by the opinion of this court in *People v. Daminski* (1980), 80 Ill. App. 3d 903, 400 N.E.2d 708. Here, as in *Daminski*, defendant has preserved for review a genuine legal defense (the propriety of the seizure of the foil packet), an issue which would have been waived by an effective plea of guilty. Accordingly, Rule 402 admonitions need not have been given. The instant cause is distinguishable from *People v. Smith* (1974), 59 Ill. 2d 236, 319 N.E.2d 760, cited by defendant. There, unlike the instant case, the stipulation included actual conduct by the defendant and included the stipulation that the facts presented were sufficient to prove the defendant's guilt. In the instant case the record does not indicate that there was an agreed result of the trial, and the court was required to decide defendant's con-

duct by inference since it was not stipulated. See also *People v. Sullivan* (1979), 72 Ill. App. 3d 533, 391 N.E.2d 241, reaching the same result on similar facts.

Although we resolve the issues raised by defendant in favor of the State, this cause must be remanded for resentencing for two reasons. First, defendant and the State agreed to waive the presentence report. The State recommended two years imprisonment and the defendant recommended probation with the first six months in custody. Pursuant to section 5—3—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—1), a defendant "shall not be sentenced for a felony before a written presentence report of investigation is presented to and considered by the court" unless "both parties agree to the imposition of a specific sentence .* * *." Under this provision, the parties were without authority to waive the presentence report and the court was without authority to accept the purported waiver. *People v. Youngbey* (1980), 82 Ill. 2d 556, 413 N.E.2d 416.

Second, it appears that the trial judge and the parties were unaware of the range of sentences of imprisonment which was available. The trial court stated repeatedly that the offense in question, a violation of section 402(b) of the Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(b)) was a Class 3 felony, and remarked that the sentence he imposed, two years, was the minimum possible penitentiary sentence. The instant offense occurred January 10, 1980. By act effective September 14, 1979, violation of section 402(b) became a Class 4 felony (*People v. Kimmons* (1979), 79 Ill. App. 3d 601, 399 N.E.2d 187; Pub. Act. 81-583), punishable *inter alia* by a sentence of from one to three years imprisonment.

For the above reasons, we affirm the judgment of the circuit court of Jackson County denying defendant's motion to suppress and find that said court committed no error in failing to give defendant the admonitions prescribed by Supreme Court Rule 402. However, we reverse the judgment of the circuit court of Jackson County relative to defendant's sentencing and remand this cause for preparation of a presentence report and for resentencing.

Affirmed in part; reversed and remanded in part.

KARNS and WELCH, JJ., concur.