**In re ANTIOCH UNIVERSITY,**
**Appellant.**

**No. 81–688.**

District of Columbia Court of Appeals.

Argued May 9, 1984.

Decided Aug. 29, 1984.

---

J. Alan Galbraith, Washington, D.C., with whom Terrence O'Donnell, Washington, D.C., was on the brief, for Antioch University.

John W. Karr, Washington, for Edgar S. Cahn and Jean Camper Cahn, in their representative capacities for Antioch School of Law.

Philip J. Hirschkop, Alexandria, Va., for John W. Karr.

Robert D. Roadman, Washington, D.C., with whom Harold Gordon, Washington, D.C., was on the brief, for J.K. Howard.

Elkanah J. Burns, Washington, D.C., for Theresa Felton and Webster Young.

Before PRYOR and TERRY, Associate Judges, and REILLY, Chief Judge, Retired.

REILLY, Chief Judge, Retired:

This appeal—a challenge to an award against Antioch University of attorney's fees and costs incurred by the opposing parties and intervenors—is a sequel to the suit commenced by deans of Antioch Law School to prevent the officials of the University from exercising control over the administration or expenditure of law school funds. It is unnecessary to describe this litigation in any detail as our court has already done so in a previous opinion, *In re Antioch University*, 418 A.2d 105 (D.C. 1980). There we affirmed an order of the trial court which denied the plaintiffs (representing the law school) the preliminary injunction they had sought and granted partial affirmative relief to the University on its cross motion—thereby disposing of the major factual and legal issues in the original action.

The "Findings of Fact and Conclusion of Law" which accompanied this order also contained a paragraph not mentioned in our opinion, *viz.*:

> While the Court has concluded that the University's Board of Trustees does possess ultimate fiscal and administrative dominion over the law school, that very fact requires that the University assume primary responsibility for the existence of conditions and misunderstandings, dating back to the establishment of the law school, that have led directly to this litigation. It necessarily follows that all costs of this action, and all legal fees

incurred to date in connection therewith by any party thereto, should be borne by the University.

The order itself directed "that all costs, including transcript costs and legal fees, incurred in connection with the hearing on cross-motions for preliminary injunction shall be borne by defendant University, since it must bear primary responsibility for the necessity of this litigation."

The University noted an appeal from this portion of the order but withdrew it, recognizing that such award was not then an appealable order for the court had yet to set any precise amounts for fees or costs. *See Trilon Plaza Co. v. Allstate Leasing Corp.,* 399 A.2d 34, 36–37 (D.C.1979).

After our decision was published, the University, by various motions, renewed its objections to the award. The trial court then ordered that attorney fees and costs be quantified by the claimants. Upon consideration of those motions and the claims submitted by the attorneys, the court awarded (1) John W. Karr, who had represented the plaintiffs, the sum of $43,553.69 (which included $438.69 for costs); (2) Elkanah J. Burns, counsel for two intervenor clients of the school's legal aid program, $6,600.00; and (3) Harold Gordon, counsel for another intervenor (the comptroller of the school), $21,858.43 (including costs of $85.93). All of these awards were assessed against the University, the court holding that "dictates of fundamental fairness require that defendant ... pay counsel fees and costs incurred ... by plaintiffs and intervenors." It is from this order that the appeal now before us was taken.[1]

In its appeal, the University argues that the trial court had no authority to require it to pay the fees of the lawyers representing opposing parties as it is well established under the "American Rule" that in the absence of any special statute or contract,

the payment of fees to counsel is the obligation of the parties who retained them. The University contends further that as none of the claimants represented a "prevailing party" the award of costs was prohibited by Rule 54(d) of the Superior Court Civil Rules. In our opinion, the position of the appellant is correct in both respects, and accordingly, the award must be vacated.

It is apparent from the various memoranda of the trial court, including its references to "dictates of fundamental fairness" and the University's "primary responsibility for the existence of conditions and misunderstandings ... that have led directly to this litigation," that it acted on the premise that in equitable actions, courts are vested with discretion to award such attorney's fees as they deem fair and appropriate. Such premise, however, flies in the face of what the Supreme Court said in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), which emphasized the vitality of the "American Rule," requiring litigants to pay their own attorney's fees.

The *Alyeska* case was itself an equitable action. The plaintiffs—an environmental group—brought an action for declaratory and injunctive relief against the Secretary of the Interior seeking to stop the issuance of construction permits to the Alyeska Pipeline Service Company, also a defendant. Plaintiffs prevailed in the United States Court of Appeals. *Wilderness Society v. Morton,* 156 U.S.App.D.C. 121, 479 F.2d 842, *cert. denied,* 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973). After Congress had nullified the effect of this decision by authorizing the granting of the permits, the Court of Appeals then considered a request of the prevailing party

---

**1.** This order was entered by the trial court on June 10, 1981, approximately 11 months after our decision on the first appeal. Such order also included a finding that appellant's allegations of unethical conduct on the part of Mr. Karr lacked *prima facie* merit and thus did not require an evidentiary hearing. In view of our disposition of this case, we see no occasion to review or disturb this finding although these allegations were argued at some length here, as an additional ground for overruling the award of fees to Mr. Karr.

for an award of fees to counsel. While the court specifically found that none of the recognized exceptions to the American Rule were applicable, *Wilderness Society v. Morton,* 161 U.S.App.D.C. 446, 449, 495 F.2d 1026, 1029 (1974), it, nevertheless, entered an award of attorneys' fees assessed against Alyeska, reasoning that "the equities favor awarding fees." *Id.* at 456, 495 F.2d at 1036.

In reversing such award, the Supreme Court rejected the view that courts are free to assess attorney's fees as the interests of justice require. While recognizing that there are certain exceptions to the rule, the Court emphasized that courts do not have "roving authority" to allow counsel fees whenever deemed warranted. *Alyeska Pipeline Service Co. v. Wilderness Society, supra,* 421 U.S. at 260, 95 S.Ct. at 1623. The American Rule, stated the Court, "is deeply rooted in our history" and should not be deviated from in the absence of legislative authorization. *Id.* at 271, 95 S.Ct. at 1628.

In its *Alyeska* opinion, the Supreme Court set forth what it deemed the common law exceptions to the general rule. Thus, equity permits an award of fees where a party has brought an action as a trustee of a fund or property or to preserve or recover a fund "for the benefit of others in addition to himself." *Id.* at 257, 95 S.Ct. at 1621. In such a case, fees are recoverable "from the fund or property itself or directly from the other parties enjoying the benefit." *Id.* (footnote omitted). Legal fees may also be levied against a party who has willfully disobeyed a court order "or when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 258, 259, 95 S.Ct. at 1622 (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)).

■ Since the *Alyeska* decision, we have followed it with respect to fee awards by courts in this jurisdiction. Accordingly, we have held that such courts have no discretion in the absence of statute to award attorney fees unless the case falls within one of the foregoing exceptions. *See Wisconsin Avenue Associates v. 2720 Wisconsin Avenue Co-op Association,* 441 A.2d 956 (D.C.1982), *cert. denied,* 459 U.S. 827, 103 S.Ct. 62, 74 L.Ed.2d 64 (1982); *Washington Public Interest Organization v. District of Columbia,* 436 A.2d 1299 (D.C. 1981); *Bay General Industries, Inc. v. Johnson,* 418 A.2d 1050 (D.C.1980); *Trilon Plaza Co. v. Allstate Leasing Corp., supra.*

The grounds relied upon by the court below for its award are quite different from those enumerated in *Alyeska* as situations in which a departure from the American Rule is authorized. It is one thing to say that if a party has been lax or ambivalent in enforcing its rights under contract, it must shoulder some blame, if the other party then sues—even unsuccessfully—to prevent belated enforcement; but quite another to hold that it is thereby liable for all the expenses incurred by the party bringing the law suit. Such a holding, if permitted to stand, would create a wholly new exception to the American Rule.

Appellees argue in the alternative that even if the trial court was without broad equitable power to award counsel fees, the challenged award fits within the "common benefit" exception to the American Rule which this court recognized in *District of Columbia v. Green,* 381 A.2d 578 (D.C. 1977).

The asserted analogy of the instant case to *Green* borders on the fanciful. In *Green,* following a successful action brought by a number of real estate taxpayers aggrieved by an illegal valuation procedure, the District appealed an award of fees to counsel for the prevailing parties which was assessed against the city treasury. We held that counsel was entitled to an award, not against the public treasury generally, however, but against the rebates to the taxpayers who had benefited from the result even though they had not been parties plaintiff. *Id.* at 584, 585.

What appellees overlook is that this particular exception to the American Rule operates only in favor of parties who have prevailed in the underlying litigation. As the Supreme Court recently stated in a case where the statute giving use to the claim permitted fee awards:

> [O]rdinary conceptions of just returns reject the idea that a party who wrongly charges someone with violations of the law should be able to force that defendant to pay the costs of the wholly unsuccessful suit against it. *Ruckelshaus v. Sierra Club*, 462 U.S. 680, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983).

Thus, based upon "intuitive notions of fairness to litigants," the established rule is that "a successful party need not pay its unsuccessful adversary's fees." *Id.*

▪ Here, a review of the underlying litigation clearly demonstrates that appellees did not prevail. In their complaint, appellees sought "(1) a declaration that the law school [was] an entity independent of and separate from the University, or alternatively, (2) a judgment that the law school [could] conduct its fiscal and administrative affairs without 'interference' from the University." *In re Antioch University, supra,* 418 A.2d at 107 n. 2. Neither form of relief was granted. In fact, in the order affirmed by this court, the trial court directed that unrestricted funds received in connection with operation of the law school be transferred to the University. The University was not ordered to refrain from asserting control over fiscal and administrative affairs of the law school. Nor was the law school declared to be an entity separate from the University. In short, the plaintiffs were unsuccessful. They are therefore precluded from recovering attorney's fees under this exception.

Appellees cite two other exceptions to the American Rule recognized in *Alyeska, supra,* as justifying the disputed award, (1) a violation of court order, and (2) "vexatious" and "oppressive" conduct by the University. The first allegation is based on a finding that the University's attempted dissolution of the law school board of governors was a nullity, as such action was taken while the temporary restraining order was in effect. The court, however, did not find such action "willfully disobedient," nor did it ever say that the University "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." It could scarcely have done so, as the University was not "the losing party." Thus, these arguments appear frivolous.

Appellee Howard contends that the award of his counsel fees at the expense of the University stands on a different footing. As the comptroller of the law school, subject to the general direction of the co-deans of this institution, one of his functions was to draw checks to pay for services and supplies provided to the school. When a temporary restraining order was entered at the commencement of the litigation intended to preserve the status quo until the issue of fiscal control was determined after the hearing on the preliminary injunction, Howard was warned by University counsel that if he disbursed any money without the approval of the University as distinguished from the administrators of the school, he would be personally accountable. With the authorization of the deans, he retained independent counsel who then filed a petition for instructions, setting forth his dilemma as to which set of superiors he should defer in the performance of his fiscal duties. The court then amended the temporary restraining order with clarifying language which absolved him from personal liability for any disbursements directed by the plaintiffs for purposes described in such order.

In his answering brief on appeal, he makes the point that since this was the objective his counsel sought, he prevailed on the only issue in the litigation which concerned him, and accordingly, the American Rule requiring litigants to bear the cost of their own attorney fees is not pertinent. But such rule, as we have pointed out, is applicable to a prevailing party unless one of the recognized exceptions can

be demonstrated. Howard has failed to cite any judicial authority for the proposition that the University, as a prevailing party, may be liable for the attorney fees of one who has petitioned the court for instructions. Moreover, in *Cahn v. Antioch University,* 482 A.2d 120 (D.C.1984) a companion case decided by this court today, we held that the unauthorized expenditure of University funds by the co-deans to pay counsel they retained was a breach of their fiduciary duties to the University, and therefore, have entered judgment for the University for recovery of those funds. Here, the University did not authorize Howard to retain independent counsel. Had such counsel been paid out of University funds prior to the award, such payment would also have been improper. Accordingly, the award of fees to counsel for appellee Howard must also be set aside.

There remains the issue of the assessment of some $564.00 in court costs against appellant. Under Rule 54(d), *supra,* the award of costs may be awarded only to a prevailing party. While the court below did say that the "University's characterization of itself as 'the prevailing party' ... represents a rather simplistic and self-serving view," it is plain for the reasons previously stated that none of the appellees prevailed. Consequently, the award of costs exceeded the powers vested in the trial court by this rule.

*Reversed.*